IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. MALONE, No. B52858, <br><br> Plaintiff, <br><br> vs. <br><br> IDOC, S. MERCIER, INTERNAL AFFAIRS, DR. BUTALIO, T. ADESANYA, NURSE PRACTITIONER BOB, PINCKNEYVILLE CORRECTIONAL CENTER, WEXFORD HEALTH CARE SERVICES, INC., CHRISTINE BROWN, VIPIN SHAW, DR. SCOTT, ANGEL RECTOR, 1 JOHN/JANE DOE, 2 JOHN/JANE DOE, 3 JOHN/JANE DOE, 1 JOHN DOE, MR. CLELAND, LT. FRANK, B. LIND, C/O JUSTICE, MS. JUSTIC, 4 JOHN/JANE DOE, 1 JANE DOE, 2 JOHN DOE, and 3 JOHN DOE, <br><br> Defendants. | CIVIL NO. 17-cv-952-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff William A. Malone, an inmate in Pinckneyville Correctional Center ("Pinckneyville"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Although the Complaint can be difficult to decipher, the Court was able to identify the following claims: (1) Pinckneyville is violating the ADA with respect to prisoners in wheelchairs (such as Plaintiff); (2) Prisoners in wheelchairs are being subjected to

unconstitutional conditions of confinement; (3) Pinckneyville officials have labeled Plaintiff a gang-member, snitch, and pedophile—placing his life in danger; (4) a correctional officer verbally harassed Plaintiff; (5) officials at Pinckneyville negligently failed to maintain an elevator and, as a result, Plaintiff was injured when the elevator malfunctioned; and (6) officials at Pinckneyville have been deliberately indifferent to Plaintiff's serious medical condition (allegedly defective hip replacement and associated symptoms) and are denying necessary treatment.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, and for consideration of Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* ("IFP") (Doc. 3).

The IFP Motion will be simultaneously considered with the required preliminary review of the Complaint because these matters are inextricably intertwined. In conducting its review, the Court also considers allegations in Plaintiff's Motion for Preliminary Injunction (Doc. 2).

## Litigation History

Court documents are public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). Review of documents filed in the electronic docket of this Court and on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) discloses Plaintiff has already had ten cases dismissed as frivolous or for failure to state a claim upon which relief can be granted. *See Malone v. Ardis,* No. 13-cv-1543 (C.D. Ill. Dec. 3, 2013); *Malone v. City of Peoria,* 13-cv-1559 (C.D. Ill. Feb. 20, 2014); *Malone v. Hill et al.,* No. 16-cv-973 (S.D. Ill. Oct. 26, 2013); *Malone v. Fritts et al.,* No. 16-cv-200 (S.D. Ill. Nov. 7, 2016); *Malone v. Unknown Party,* No. 16-cv-974 (S.D. Ill. Nov. 8, 2016); *Malone v. Duvall*, No. 16-cv-977 (S.D. Ill. Nov. 29, 2016); *Malone v. IDOC et al.*, No. 16-cv-

978 (S.D. Ill. Dec. 8, 2016); *Malone v. Shah et al.,* No. 16-cv-972 (S.D. Ill. Dec. 30, 2016); *Malone v. Orange Crush*, No. 16-cv-975 (S.D. Ill. Dec. 30, 2016); and *Malone v. Groves et al.*, No. 16-cv-979 (S.D. Ill. Jan. 10, 2017). Thus, Plaintiff has accumulated ten "strikes" for purposes of § 1915(g).

In this most recent filing, Plaintiff failed to disclose his full litigation history. He references ten cases filed between 2013 and 2015, but fails to disclose that two of those cases were dismissed as frivolous or for failure to state a claim. (Doc. 1-1). He also fails to disclose any of his more recent litigation in this district or the eight strikes he recently received in connection with that litigation. He merely states that he is disclosing the cases he can remember to ensure that he is not once again sanctioned for failure to disclose his litigation history.[1] *Id.*

A plaintiff's failure to disclose his litigation history, particularly when he seeks to proceed IFP, may be grounds for immediate dismissal of the suit. *Ammons v. Gerlinger,* 547 F.3d 724, 725 (7th Cir. 2008) (termination of the suit is an appropriate sanction for struck-out prisoner who took advantage of court's oversight and was granted leave to proceed IFP); *Sloan v. Lesza,* 181 F.3d 857, 858–59 (7th Cir. 1999) (litigant who sought and obtained leave to proceed IFP without disclosing his three-strike status committed a fraud upon the court); *see also Hoskins v. Dart,* 633 F.3d 541, 543 (7th Cir. 2011) (dismissal with prejudice appropriate where court-issued complaint form clearly warned Plaintiff that failure to provide litigation history would result in dismissal).

Although dismissal as a sanction is appropriate in this situation, there are additional considerations that merit discussion. Specifically, as discussed more fully below, Plaintiff's

---

[1] On August 15, 2017, Chief Judge Michael J. Reagan dismissed one of Plaintiff's *pro se* civil rights actions with prejudice as a sanction for intentionally failing to disclose his litigation history. *See Malone v. Lashbrook,* No. 15-cv-1304 (S.D. Ill. Aug. 15, 2017) (Doc. 55).

medical claims suggest he may be in "imminent danger" within the meaning of 28 U.S.C. § 1915(g). Accordingly, the Court proceeds with evaluating Plaintiff's Complaint and IFP Motion.

## Relevant Legal Standards

### Pleading Standard

Section 1915A provides:

(a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### Pauper Status

The filing fee has not been paid. Instead, Plaintiff seeks leave to proceed *in forma pauperis* (Doc. 3). It appears that Plaintiff is unable to pay the full filing fee at this time. Because

Plaintiff has accumulated three "strikes" for purposes of § 1915(g) (ten to be exact), however, he may not proceed IFP in this or any other pending case in federal court unless he is in imminent danger of serious physical injury.[2]

**Imminent Danger**

In this case, it must be kept in mind that the three-strikes barrier is a prerequisite, in that it determines which claims, if any, may be considered without payment of the full filing fee. The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed [as a pauper] when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id.* at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed [as a pauper]." *Id.* at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

---

[2] 28 U.S.C. § 1915 provides:
   [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## Discussion

As noted above, the Complaint asserts the following claims: (1) Pinckneyville is violating the ADA with respect to prisoners in wheelchairs (such as the Plaintiff); (2) Prisoners in wheelchairs are being subjected to unconstitutional conditions of confinement; (3) Pinckneyville officials have labeled Plaintiff a gang-member, snitch, and pedophile—placing Plaintiff's life in danger; (4) a correctional officer verbally harassed Plaintiff; (5) officials at Pinckneyville negligently failed to maintain an elevator and, as a result, Plaintiff was injured when the elevator malfunctioned; and (6) officials at Pinckneyville have been deliberately indifferent to Plaintiff's serious medical condition (an allegedly defective hip replacement and associated symptoms) and are denying necessary treatment.

With the exception of the last claim—pertaining to Plaintiff's hip replacement—none of the above claims meets the Seventh Circuit's standard for finding imminent danger. The claims pertaining to the housing of disabled prisoners identify possible ADA violations and/or Eighth Amendment constitutional claims. Unfortunately, however, Plaintiff does not explain what serious physical injury he faces as a result of the alleged violations.[3] The allegation pertaining to a verbal altercation and/or harassment by a correctional officer clearly does not suggest imminent danger in any way. Plaintiff does vaguely allege that his life is in danger because he has been labeled as a gang member, snitch, and/or pedophile. But these allegations are incredibly generic and provide no information suggesting that Plaintiff faces a "real and proximate" threat at this time.[4] Finally, the claim pertaining to being injured when an elevator malfunctioned

---

[3] These claims are also strikingly similar to claims presented by Plaintiff in *Malone v. IDOC,* 15-cv01304-MJR-SCW (dismissed with prejudice on August 15, 2017 for failure to disclose litigation history).
[4] These claims are also strikingly similar to claims raised by Plaintiff in *Malone v. IDOC,* 15-cv01304-MJR-SCW and *Malone v. Heideman,* 15-cv-1104 (still pending).

involves a past injury (for which Plaintiff received treatment) and does not clear the three-strikes hurdle.

The allegations in the Complaint and Motion for Preliminary Injunction do, however, present a colorable Eighth Amendment claim regarding deliberate indifference to serious medical needs. These allegations also suggest that, with respect to this claim, a finding of imminent danger is appropriate. A summary of these allegations is provided below.

In 2004 (prior to being incarcerated), Plaintiff injured his hip in a work-related accident. (Doc. 2, p. 4). As a result, Plaintiff had a bilateral total hip replacement for his left and right hip in 2005. *Id.* Plaintiff immediately experienced issues with the procedure (his body began "rejecting" the hip replacement). *Id.* Plaintiff received several prescription medications including Vicodin, OxyContin, and Flexoril. *Id.* Plaintiff also was being treated by a physical therapist and chiropractor. *Id.* In 2009, Plaintiff was scheduled for a corrective bilateral hip surgery, but he was arrested before the surgery took place. *Id.* In 2010, he was transferred from a county jail to Dixon Correctional Center ("Dixon"). At the time, Plaintiff was still receiving his previously prescribed medications. *Id.* Plaintiff further contends that Dixon officials planned to refer Plaintiff to an outside specialist for a second hip replacement. (Doc. 2, pp. 4-5).

On June 25, 2010, Plaintiff was transferred to Pinckneyville. (Doc. 2, p. 4). Plaintiff's narcotic pain medication was confiscated and replaced with non-narcotic pain medication. *Id.* The non-narcotic pain medication does not treat Plaintiff's pain effectively. *Id.* As a result, Plaintiff has been struggling with severe pain since his transfer to Pinckneyville. *Id.*

In 2017, Plaintiff's already painful condition began to deteriorate. (Doc. 2, pp. 4-7; Doc. 1, pp. 4-5; Doc. 1-2, pp. 72-73). Plaintiff contends that he lives in excruciating pain every day and says that he experiences "symptoms of burning, throbbing, shooting unending pain to

lower back, spine, and hips with worsening loss of dexterity in the right side of his body, which has been non-stop since 2008." (Doc. 2, p. 5).

On July 5, 2017, Plaintiff saw Dr. Bob, a nurse practitioner, regarding his increasingly severe hip pain and associated symptoms. (Doc. 2, p. 5; Doc. 1-2, pp. 72-73). Dr. Bob examined Plaintiff and issued a referral for Plaintiff to see an orthopedic specialist. *Id.* On July 13, 2017, Brown, the HCU Administrator, overrode Dr. Bob's referral. (Doc. 2, p. 5, Doc. 1, p. 4).

On July 25, 2017, Plaintiff filed a grievance regarding his ongoing hip pain, requesting a referral to an outside specialist and surgery. (Doc. 1-2, p. 72). In the grievance, Plaintiff describes increasingly severe hip and back pain. *Id.* Plaintiff stated that, when in certain positions, the pain is so severe he passes out. *Id.* The request was denied by Brown and/or Wexford because they wanted to have x-rays taken and reviewed prior to approving an orthopedic medical furlough. (Doc. 1-2, pp. 73-4).

At the end of August 2017, Plaintiff met with Dr. Bob to review his x-rays. (Doc. 1, p. 7). Dr. Bob reported that the person reviewing Plaintiff's x-rays concluded they look normal (the x-rays did not reveal any fractions, slippage, dislocation, or any other problems) and that his request for an orthopedic medical furlough was being denied. (Doc. 1, p. 7). Plaintiff objected to this conclusion. *Id.* Dr. Bob responded by stating "look, I'm just the messenger, don't blame me, I tried, HCU administrator Christine Brown gave me my orders on what to say and you aint getting your hips replaced, that's it, she over-rided [sic] my recommendation to send you out to an orthopedic specialist, there is nothing I can do."). *Id.* Dr. Bob also allegedly said, "They are not going to foot the bill, so you are not getting your hips replaced." (Doc. 2, p. 7).

At some point, Plaintiff also was examined by Dr. Butalio (described as a substitute physician). (Doc. 2, p. 6). Dr. Butalio indicated that Plaintiff should be referred to an orthopedic

specialist, but he said he could not make the referral until he had Plaintiff's x-rays. *Id.* At the same visit, Dr. Butalio prescribed gel packs and an air seat cushion for Plaintiff's wheelchair (to help alleviate his discomfort). *Id.* Brown subsequently denied the prescribed treatment. *Id.*

Since then, Plaintiff has not received any follow-up medical care. (Doc. 2, p. 6). His sick call requests are ignored, and he has been told that because Pinckneyville does not presently have a physician on staff, it will be months before he can be seen by a physician. *Id.*

Plaintiff contends hip replacement studies show that defective implants can shear off into the patient's body, causing serious and life threatening issues. (Doc. 2, p. 5). In fact, some hip replacements have been recalled because of this defect. *Id.* Plaintiff contends that his worsening symptoms suggest something is wrong with his hip implant. (Doc. 2, p. 5). Plaintiff states that if he does not receive appropriate treatment, he is at risk of life-threatening complications and could even lose his legs. (Doc. 2, pp. 5-7).

These allegations are sufficient to state a claim for deliberate indifference to a serious medical need under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners."). The Court also finds, at this early juncture, that the claim involves a real and proximate threat of serious physical injury, which gets Plaintiff over the three-strikes bar. Thus, Plaintiff's Eighth Amendment claim regarding deliberate indifference to an allegedly defective hip replacement and associated symptoms will be allowed to proceed—determining against whom requires additional analysis.

**Personal Involvement**

Section 1983 creates a cause of action based on personal liability and predicated upon fault. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior. *Id.* at 835. Rather, the corrections official must have acted with the equivalent of criminal recklessness. *Id.* at 836–37.

Four named defendants are linked to the alleged denial of medical care: (1) Brown; (2) Wexford; (3) Dr. Bob; and (4) Dr. Butalio.[5]

Plaintiff alleges Wexford, the private corporation that serves as the healthcare provider at Pinckneyville, has implemented policies that emphasize cost over access to adequate medical care. (Doc. 1, pp. 5-7; Doc. 2, pp. 6-7). This is sufficient to allow Plaintiff to proceed as to Wexford. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015).

Plaintiff alleges that Brown has denied necessary medical treatment because referring Plaintiff to an outside specialist for potential hip replacement surgery is too expensive. (Doc. 1, pp. 5-7; Doc. 2, pp. 6-7). This is sufficient to proceed as to Brown. *See Perez*, 792 F.3d at 781 (a delay in treatment may constitute deliberate indifference if it exacerbates the inmate's injury or unnecessarily prolongs his pain); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (failing to provide adequate, timely care for a nonmedical reason suggests deliberate indifference).

---

[5] The Complaint often references other Defendants with respect to Plaintiff's deliberate indifference claim. With the exception of these four Defendants, however, the Complaint does not suggest personal involvement. Rather, other Defendants are merely referenced in passing and without reference to any specific conduct that would suggest personal involvement.

The Complaint does not suggest that Dr. Bob or Dr. Butalio responded to Plaintiff's medical needs with deliberate indifference. According to Plaintiff, both Defendants attempted to provide him with appropriate medical treatment, but each Defendant's recommended course of treatment was denied by Brown. Accordingly, the deliberate indifference claim will be dismissed without prejudice as to Dr. Bob and Dr. Butalio.

In summary, Plaintiff may proceed *in forma pauperis* on a single claim:

**Count 1: Defendants Wexford and Brown were deliberately indifferent to Plaintiff's serious medical condition (allegedly defective hip replacement and associated symptoms) in violation of the Eighth Amendment.**

Relative to Count 1, for the reasons stated, Defendants Dr. Bob and Dr. Butalio will be dismissed without prejudice for failure to state a claim.

Although Plaintiff may pay the filing fee and proceed on his other claims, they cannot proceed in this action. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). The other five claims asserted in the Complaint are entirely unconnected to Plaintiff's medical care claim.

Rather than actually sever the claims into separate cases and await payment of the filing fee for each case, these other possible claims will be dismissed. Furthermore, the Court has had to delve into all of the allegations presented *only* in order to sort out if and how to proceed relative to the three-strikes problem. Therefore, with the exception of Count 1, all claims against all defendants will be dismissed without prejudice. If Plaintiff desires to proceed on any of the

dismissed claims, he must initiate separate actions and pay the filing fees (or attempt to secure pauper status as he deems appropriate).

### Injunctive Relief

With respect to Plaintiff's request for a preliminary injunction and any other injunctive relief that might be granted at the close of the case, the warden is the appropriate party. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, Karen Jaimet, the current warden of Pinckneyville, shall be added to the docket—in her official capacity—for purposes of carrying out any injunctive relief that might be ordered.

### Pending Motions

Plaintiff's Motion for Preliminary Injunction (Doc. 2) is referred to Magistrate Judge Donald G. Wilkerson for prompt disposition. Plaintiff's Motion for Assistance of Counsel (Doc. 4) is likewise referred to Magistrate Judge Wilkerson for disposition.

### Challenging the Imminent Danger Finding

The Court notes that Defendants are free to contest the factual basis for the Court's imminent danger determination via motion pursuant to *Taylor v. Watkins* 623 F.3d 483, 485 (7th Cir. 2010).

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 3) is **GRANTED in part and DENIED in part**, in that Plaintiff may proceed as a pauper on the following claim:

**Count 1:** Defendants Wexford and Brown were deliberately indifferent to Plaintiff's serious medical condition (allegedly defective hip replacement and associated symptoms) in violation of the Eighth Amendment.

The initial partial filing fee and payment scheme will be set forth in a separate order.

**IT IS FURTHER ORDERED** that, relative to the Eighth Amendment medical care claim asserted in Count 1, Defendants **DR. BOB** and **DR. BUTALIO** are **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **ALL OTHER CLAIMS AGAINST ALL OTHER DEFENDANTS are DISMISSED without prejudice**.

Consistent with this Order, the Clerk of the Court is **DIRECTED** to terminate the following as defendants: **IDOC, S. MERCIER, INTERNAL AFFAIRS, DR. BUTALIO, T. ADESANYA, NURSE PRACTITIONER BOB, PINCKNEYVILLE CORRECTIONAL CENTER, VIPIN SHAW, DR. SCOTT, ANGEL RECTOR, MR. CLELAND, LT. FRANK, B. LIND, C/O JUSTICE, MS. JUSTICE,** and **ALL UNIDENTIFIED DEFENDANTS (JOHN/JANE DOE DEFENDANTS).**

The Clerk of the Court is **DIRECTED** to add **KAREN JAIMET**, the current warden of Pinckneyville, as a defendant (official capacity only) for purposes of carrying out any injunctive relief that might be granted.

The Clerk of Court shall prepare for Defendants **WEXFORD and BROWN**, in their individual capacities, and **JAIMET** in her official capacity: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including disposition of Plaintiff's Motion for Preliminary Injunction (Doc. 2) and Plaintiff's Motion for Assistance of Counsel (Doc. 4) .

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 16, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**