IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. MALONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-00952-NJR-DGW |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| CHRISTINE BROWN, and | ) |
| KAREN JAIMET, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc. 54), which recommends granting in part the Motion for Preliminary Injunction filed by Plaintiff William Malone (Doc. 2), denying the Motion to Dismiss filed by Defendant Wexford Health Sources, Inc.[1] (Doc. 33), and denying as moot the Motion to Dismiss filed by Malone (Doc. 40).

The Report and Recommendation was entered on June 25, 2018. Wexford filed an objection[2] on July 10, 2018 (Doc. 56), to which Malone responded on July 20, 2018 (Doc. 58). For the following reasons, the Court adopts the Report and Recommendation.

### BACKGROUND

Malone, an inmate of the Illinois Department of Corrections currently housed at Menard Correctional Center, filed this lawsuit on September 6, 2017, for deprivations of

---

[1] The Clerk's Office is **DIRECTED** to correct Defendant's name on the docket sheet from Wexford Health Care Services, Inc., to Wexford Health Sources, Inc.
[2] Defendants Brown and Jaimet filed a motion for leave to join Wexford's objection (Doc. 57). The motion is hereby **GRANTED**.

his constitutional rights pursuant to 42 U.S.C. § 1983 (Doc. 1). Along with his complaint, Malone filed a motion for preliminary injunction (Doc. 2). Malone has accumulated at least ten "strikes" in the past for filing frivolous lawsuits.[3] Normally, under 28 U.S.C. § 1915(g), this would mean Malone is barred from bringing another lawsuit. The statute provides an exception, however, for circumstances where the prisoner "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). After threshold review of the complaint and the accompanying motion for preliminary injunction, the Court determined that the imminent danger exception applied as to one of Malone's claims: that officials at Pinckneyville were deliberately indifferent to his serious medical needs. Malone alleges his total hip replacement, which was implanted in 2005 prior to his incarceration, is defective and causing him severe pain. Malone claims officials at Pinckneyville confiscated his narcotic pain medication when he was transferred there in June 2010 and replaced it with non-narcotic pain medication that does not effectively treat his pain. He also asserts that in 2017 his condition began to deteriorate such that he is experiencing a multitude of other physical symptoms and lives in excruciating pain every day.

On December 18, 2017, Defendant Wexford filed a motion to dismiss Malone's complaint, challenging Malone's assertion that he is in imminent danger (Doc. 33).[4] Defendants argue that Malone's most recent x-rays in July 2017 were normal and

---

[3] *See Malone v. Ardis*, No. 13-cv-1543 (C.D. Ill. Dec. 3, 2013); *Malone v. City of Peoria*, No. 13-cv-1559 (C.D. Ill. Feb. 20, 2014); *Malone v. Hill*, No. 16-cv-973 (S.D. Ill. Oct. 26, 2016); *Malone v. Fritts*, No. 16-cv-200 (S.D. Ill. Nov. 7, 2016); *Malone v. Unknown Party*, No. 16-cv-974 (S.D. Ill. Nov. 8, 2016); *Malone v. Duvall*, No. 16-cv-977 (S.D. Ill. Nov. 29, 2016); *Malone v. IDOC*, No. 16-cv-978 (S.D. Ill. Dec. 8, 2016); *Malone v. Shah*, No. 16-cv-972 (S.D. Ill. Dec. 30, 2016); *Malone v. Orange Crush*, No. 16- cv-975 (S.D. Ill. Dec. 30, 2016); and *Malone v. Groves*, No. 16-cv-979 (S.D. Ill. Jan. 10, 2017).

[4] Defendants Brown and Jaimet were granted leave to join Wexford's motion to dismiss (Docs. 37, 46).

indicated no fracture, dislocation, or breaking or shearing of the implant (*Id.*, Doc. 34-1). Furthermore, the x-ray was similar to Malone's 2015 x-ray, indicating his condition has not worsened since then (Doc. 34-1). Defendants provided an affidavit from Dr. Butalid, the Pinckneyville Medical Director, who attested that he saw Malone several times in 2017 and treated him with pain medication and anti-inflammatory medication for possible arthritis (*Id.*). Dr. Butalid further attested that there is no indication any part of Malone's hip implant has sheared or broken off, nor is there any indication that he is suffering from an immediate medical need for surgery (*Id.*). Rather, Dr. Butalid believes that physical therapy and exercise will help Malone's complaints (*Id.*). Based on these facts, Defendants argue the exception in 28 U.S.C. § 1915(g) does not apply and the complaint should be dismissed. Malone responded to Defendants' motion, which he styled as a "motion to dismiss" Defendants' motion to dismiss, but did not substantively address Defendants' arguments (Doc. 40).

On June 4, 2018, Magistrate Judge Donald G. Wilkerson held an evidentiary hearing on both Defendants' motion to dismiss and Malone's motion for injunctive relief. At the hearing, Magistrate Judge Wilkerson explained that he needed to know whether Malone was in imminent danger when he filed his lawsuit, as well as whether he is still in imminent danger (Doc. 55, p. 3).

Malone testified that prior to filing this lawsuit his health began deteriorating. His motor functions began declining, blood appeared in his stool and urine, his sight was nearly completely gone in his right eye, and his hearing was gone in his left ear (*Id.*, p. 4-5). His pain was so bad that it caused him to pass out at times. He also felt nauseated, he began losing weight, and his joints and muscles were weak (*Id.*, p. 5).

Malone stated that the prison was going to give him an egg crate cushion for his mattress, but he had yet to receive it (*Id.*, p. 6). He has suffered from bacterial infections, an ear infection, and two urinary tract infections, which he gets over and over again (*Id.*). Malone also testified that his asthma has worsened and his blood pressure has risen (*Id.*, p. 7). Malone claimed all of these things were happening when he filed his complaint (*Id.*). He further surmised that these physical ailments were symptoms of metallosis, a condition caused by his steel hip implants grinding and finely scraping metal off into his body (*Id.*).

On cross-examination by counsel for Wexford, Malone testified that the doctor who performed his hip implant surgeries in 2005 told him the implants made him three and a half inches taller than he used to be, which was a problem, and that there was something going on with the implants that was causing Malone to have pain (*Id.*, p. 9). After his surgeries, doctors had Malone try physical therapy, aquatic therapy, and use of a TENS machine (*Id.*, p. 10). In 2007 or 2008, Malone was told he would need a revision "because of this steel." (*Id.*).

Malone further testified that he had two or three x-rays done on July 27, 2017, and that he remembered having an x-ray done in January 2018 as well (*Id.*, pp. 12-13). He asserted, however, that Dr. Siddiqui, the medical director at Menard, has made it clear there is no one at Menard who specializes in orthopedic medicine (*Id.*, p. 13).

Defense counsel then elicited testimony about the various treatments Malone has received while in prison. Malone testified he was taking Ultram/Tramadol and two other medications from the time he filed his complaint until he was transferred from Pinckneyville to Menard in January 2018 (*Id.*, p. 14). He admitted he had been offered

physical therapy at both institutions (*Id.*, p. 15). In March 2018, Malone spoke to Dr. Siddiqui about his asthma, and Dr. Siddiqui provided him with an inhaler (*Id.*, p. 16).

At this point in the cross-examination, Magistrate Judge Wilkerson inquired as to the relevance of counsel's questions, as the issue was whether Malone was in imminent danger at the time he filed his complaint (*Id.*). Counsel responded that Malone's credibility was at issue, and Magistrate Judge Wilkerson allowed the questioning to continue (*Id.*, p. 17). Malone testified that he is currently suffering from pain in his hips and that he is in imminent danger because he has metallosis (*Id.*, p. 18). He admitted he was prescribed Tramadol in May 2018, but claimed he was not given a dosage that is adequate to deal with his pain (*Id.*, pp. 18-19). His pain is so intense that he is in diapers and has a catheter because he cannot feel when he passes bowels or urinates, though he admitted he has had the catheter since 2012 (*Id.*, p. 19). He claimed he weighed 290 when he was transferred to Menard in January 2018 but now weighs 220 (*Id.*, p. 19). Malone concluded by testifying that he just wants the pain to stop, but doctors have told him he cannot have his implants removed because there will be nothing left to support him (*Id.*, p. 21). So, he just has to accept whatever is going on in his body (*Id.*).

After indicating she had no further questions for Malone, defense counsel said she had Dr. Siddiqui available to testify as to Malone's July 2017 x-ray, as well as a follow-up x-ray taken in January 2018. Magistrate Judge Wilkerson stated that he was not interested in what happened in January 2018, but rather what was happening at the time Malone filed the lawsuit (*Id.*). However, Magistrate Judge Wilkerson invited counsel to file anything else she thought necessary (*Id.*). Counsel did not file anything further with the Court.

## The Report and Recommendation

Magistrate Judge Wilkerson found Malone's testimony regarding his medical issues to be credible. He observed that Malone appeared to weigh closer to 200 pounds than the 295 pounds reported in his medical records in 2017. While Malone's self-diagnosis of metallosis may not be accurate, Magistrate Judge Wilkerson found that Malone has experienced and is currently experiencing severe pain and functional limitations that may indeed be the result of his implants. He further found that neither Dr. Butalid nor Dr. Siddiqui is a specialist qualified to evaluate and treat Malone's orthopedic needs. And while Dr. Butalid attested that Malone's medical condition has not changed significantly, Malone's testimony indicates otherwise.

Based on these facts, Magistrate Judge Wilkerson concluded that Malone is entitled to a preliminary injunction. In addition to showing a reasonable likelihood of success on the merits of his deliberate indifference claim, Malone has demonstrated irreparable harm absent an injunction in the form of his significant weight loss, his extreme pain, and his various other functional limitations. There is no adequate remedy at law for Malone's body "failing." Furthermore, a referral to an orthopedic specialist to determine the cause of Malone's deteriorating physical state likely would not burden Defendants, while the cost to Malone of not seeing a specialist is high. Given these factors, Magistrate Judge Wilkerson recommended that this Court find Malone is entitled to equitable relief.

Magistrate Judge Wilkerson also concluded that the evidence from the hearing supports Malone's allegations that he was in imminent danger at the time he filed the complaint. Accordingly, Magistrate Judge Wilkerson recommended that Defendants'

motion to dismiss be denied and Malone's *in forma pauperis* status remain intact.

## DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). If no objection is made, the Court reviews the Report and Recommendation only for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). In reviewing the Report and Recommendation, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To be granted an injunction, a plaintiff must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether the "plaintiff has any

likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "The absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. *Id.* Only if the plaintiff will suffer irreparable harm in the interim—that is, before a final judgment—can he obtain a preliminary injunction. *Id.*

Once the plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

Here, Defendants object to the Report and Recommendation as to the Motion for Preliminary Injunction because, they argue, Magistrate Judge Wilkerson limited testimony at the hearing to evidence of Malone's medical condition on September 6, 2017, the date he filed his complaint. They also take issue with Magistrate Judge Wilkerson's refusal to allow Dr. Siddiqui to testify. They complain that despite this limitation on the evidence, Magistrate Judge Wilkerson then went on to make findings of fact and conclusions of law regarding Malone's current medical needs. Defendants also argue that it was clear error for Magistrate Judge Wilkerson to conclude that Defendants presented no evidence contradicting Malone's claims of pain, functional limitations, and

significant weight loss. Defendants claim they tried to adduce such evidence through the testimony of Dr. Siddiqui, but were precluded from doing so.

Defendants assert that if Dr. Siddiqui had testified, he would have explained that Malone is not currently facing irreparable harm. Specifically, Dr. Siddiqui would have testified that there is no defect in Malone's implants and that Malone's January 2018 x-ray shows little change from his July 2017 x-ray. He also would have testified that his pain and decreased range of movement is likely caused by arthritis, and that pain medication and physical therapy have been ordered for Malone. Finally, Dr. Siddiqui would have testified that Malone's weight loss was attributed to being weighed with his wheelchair at Pinckneyville while being weighed without his wheelchair at Menard.

Defendants also object to the Report and Recommendation as it pertains to their Motion to Dismiss. Defendants argue that Dr. Butalid's affidavit contradicts Malone's assertion that he was in imminent danger at the time he filed his complaint, including Dr. Butalid's conclusion that Malone's 2017 x-ray showed no fracture, dislocation, or other abnormalities with regard to the hip implant. Defendants again complain that Dr. Siddiqui would have testified that his January 2018 x-ray was consistent with his July 2017 x-ray; therefore, Malone must not have been in imminent danger when he filed his complaint in September 2017.

**A. Preliminary Injunction**

The Court disagrees with Defendants' representation of the evidentiary hearing held by Magistrate Judge Wilkerson, in that the evidence was not limited to Malone's medical condition on September 6, 2017. In response to cross-examination by Defendants, Malone stated that, as a result of his allegedly defective implants, he

currently is suffering from pain in his hips so severe that he is in diapers and has passed out (Doc. 55, pp. 19, 21). He also testified he has lost weight, his skin is sagging, and he cannot exercise or do physical therapy (*Id.*, p. 19). His lungs and breathing are deteriorating, and his asthma is worsening (*Id.*). He also claims to be experiencing bacterial infections (*Id.*, p. 6).

Defendants had the opportunity to question Malone about these current symptoms, but instead chose to focus on the care and medication Malone received in the past from Dr. Butalid and Dr. Siddiqui at Pinckneyville and Menard, respectively. When asked to explain the relevance of this testimony, defense counsel only mentioned Malone's credibility was at issue and made no mention of the pending motion for preliminary injunction. Counsel ended her questioning of Malone on her own and was not cut short by Magistrate Judge Wilkerson. And while it is true Magistrate Judge Wilkerson stated that Dr. Siddiqui's testimony was not necessary because he was interested in what happened before Malone filed his lawsuit, he did invite counsel to file anything else that may be necessary (*Id.*, p. 22). Accordingly, Defendants could have filed an affidavit from Dr. Siddiqui after the hearing. They did not.

In a similar case involving an inmate's potentially defective hernia mesh that was very recently decided by the Seventh Circuit, the Court held that the "obdurate refusal" to provide specialized treatment can amount to deliberate indifference when the need for such treatment is known. *Hoban v. Wexford Health Sources, Inc.*, No. 17-2794, 2018 WL 3492824, at *2 (7th Cir. July 20, 2018) (citing *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014); *Greeno v. Daley*, 414 F.3d 645, 654–55 (7th Cir. 2005)). The Court further stated that evidence of untreated pain can constitute irreparable injury, and where a "proper exam

of [an] implant can prevent severe pain or permanent problems, [the plaintiff] may have no adequate remedy at law without the exam." *Id.*

Likewise, Malone's continued, extreme hip pain and other symptoms evince a need for specialized treatment, if only (at this point) in the form of an examination to determine whether his implants are causing his myriad issues. The cost to Defendants of sending Malone to a specialist is surely less than the cost that will be incurred by Malone if he does not see a specialist, in the form of his deteriorating health.

After reviewing all of the evidence, the Court agrees with Magistrate Judge Wilkerson that Malone has established a reasonable likelihood of success on the merits of his case, that he faces irreparable harm, that he has no adequate remedy at law, and that the balance of equities warrants relief. Accordingly, Malone is entitled to preliminary injunctive relief.

**B. Motion to Dismiss**

Defendants also object to the recommendation that their motion to dismiss be denied. Defendants argue that Dr. Butalid provided an affidavit stating Malone's July 2017 x-ray showed no fracture, dislocation, breaking or shearing of the implant, and a bone lucency similar to his 2015 x-ray. Defendants then again argue it was error for the Court to preclude them from presenting the testimony of Dr. Siddiqui, who would have testified that Malone's January 2018 x-ray was consistent with the July 2017 x-ray.

Logically, Dr. Siddiqui's testimony would not have had any bearing on Defendant's motion to dismiss. The motion challenged Malone's claim that he was in imminent danger when he filed the lawsuit, thus providing an exception to the three-strikes rule. That Malone's 2018 x-ray was consistent with his 2017 x-ray means

only that the x-ray results did not change. It does not negate the other evidence presented by Malone that he was suffering from unrelenting pain and other physical symptoms at the time he filed his complaint. The same can be said for Dr. Butalid's affidavit. While Dr. Butalid does not believe there is an issue with the implant based on the 2017 x-ray, his affidavit does not address Malone's multiple other symptoms.

The Court is convinced that Malone was in imminent danger of serious physical injury at the time he filed his lawsuit; therefore, it was not error to recommend that Defendants' motion to dismiss be denied.

## Conclusion

For these reasons, the Court **OVERRULES** Defendants' objections and **ADOPTS** the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 54). Plaintiff William Malone's Motion for Preliminary Injunction (Doc. 2) is **GRANTED in part**, and Defendants' Motion to Dismiss (Doc. 33) is **DENIED**. Malone's Motion to Dismiss (Doc. 40) is **DENIED as moot**.

Defendants **SHALL** immediately schedule Malone to be evaluated by an orthopedic specialist within 30 days of this Order. Within 15 days of the appointment, Defendants shall provide a notice to the Court indicating the specialist's recommendations and course of treatment, if any. In doing so, Defendants shall inform the Court when and how the treatment, if any, will be carried out.

IT IS SO ORDERED.

DATED: July 23, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**